<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **CHERYL RIVERA,** | |
| **Plaintiff,** | **Civil Action No. 15-1088 (ES)** |
| **v.** | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Cheryl Rivera seeking review of an Administrative Law Judge's ("ALJ") decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reason set forth herein, the Court AFFIRMS the ALJ's decision.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2009, Plaintiff filed a Title II claim for DIB and a Title XVI application for SSI alleging disability beginning December 31, 2005. (D.E. No. 5, Administrative Record ("Tr.") at 266, 270). The claim was initially denied on January 8, 2010. (*Id.* at 110-119). Plaintiff's claims were denied upon reconsideration on September 28, 2010. (*Id.* at 126-130). On October 14, 2010, Plaintiff filed a request for a hearing before an administrative law judge. (*Id.* at 130-137).

Plaintiff's hearing was conducted on September 28, 2011.  (*Id.* at 61-83).  The ALJ issued

a partially favorable decision on November 4, 2011.  (*Id.* at 88-102).  Plaintiff requested an Appeals

Council review, which was granted on February 14, 2013.  (*Id.* at 1-4).  On remand, the ALJ held

a hearing on November 21, 2013, and issued an unfavorable decision on January 27, 2014.  (*Id.* at

14-21).  The Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-4).  Plaintiff

subsequently filed the instant appeal.

Plaintiff filed a memorandum of law on October 14, 2015.  (D.E. No. 8, Plaintiff's

Memorandum of Law ("Pl. Mov. Br.")).  Defendant filed an opposition brief on November 25,

2015.  (D.E. No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")).  The

case is ripe for determination.

## II.     LEGAL STANDARD

### A.      Standard of Awarding Benefits

To receive DIB or SSI under Titles II and XVI, a plaintiff must show that she is disabled

within the definition of the Act.  *See* 42 U.S.C. §§ 423, 1382.  In applying for DIB, claimants must

also satisfy the insured status requirements enumerated in 42 U.S.C. § 423(c).  Those who seek

SSI must fall within the income and resource limits set forth in 42 U.S.C. §§ 1382a and 1382b.

Disability is defined as the inability to "engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The individual's physical or mental

impairment(s) must be "of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."   42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Social Security Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends.  20 C.F.R. § 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   At step five, the burden shifts to the government.  *Id.*

At step one, the plaintiff must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R.       §§ 416.972(a), (b).    If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. § 416.920(b).  If the plaintiff demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At step two, the plaintiff must demonstrate that her medically determinable impairment or the combination of his impairments is "severe."   20 C.F.R.  § 416.920(a)(4)(ii).   A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.   *See* 20 C.F.R.

§ 416.920(a)(4)(iii).  The ALJ must "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the plaintiff has the residual functional capacity ("RFC") to perform her past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the plaintiff lacks the RFC to perform any work she has done in the past, the analysis proceeds.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on her RFC and vocational factors.  20 C.F.R. § 416.920(a)(4)(v).

**B.     Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360

(3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3rd Cir. 1992).

### III.   ALJ Leonard Olarsch's Decision

ALJ Leonard Olarsch held a hearing on remand from the Appeals Council. (Tr. at 14). Following the hearing, the ALJ found Plaintiff not disabled under the Social Security Act. (*Id.* at 21). At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act and that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of disability. (*Id.* at 16). At step two, the ALJ determined that Plaintiff's fibromyalgia and affective disorder were severe impairments under the Act. (*Id.* at 16).

At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 17). At step four, the ALJ determined that Plaintiff had the RFC "to perform light work." (*Id.* at 18). According to the ALJ, Plaintiff could "occasionally lift and/or carry 20 pounds; 10 pounds frequently, stand and/or walk about 6 hours in an 8 hour work-day; sit about 6 hours in an 8 hour work-day . . . [and] perform frequent postural maneuvers." (*Id.*). But, the ALJ found that Plaintiff must avoid concentrated exposure to fumes, odors, dust, and gases. (*Id.*). The ALJ also limited Plaintiff to "simple routine, repetitive unskilled tasks." (*Id.*). Based on this RFC assessment, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a home health aide. (*Id.* at 20).

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Given these factors, the ALJ concluded that Plaintiff has not been

disable from the alleged onset date of December 31, 2005 through the date of the decision.  (*Id.* at 21).

## IV.    DISCUSSION

On appeal, Plaintiff argues that ALJ Olarsch's decision contains legal error and is not supported by substantial evidence.  In particular, Plaintiff asserts that the ALJ: (1) improperly evaluated the medical evidence, (Pl. Mov. Br. at 10); (2) failed to properly assess Plaintiff's RFC, (*id.* at 17); and (3) did not provide the vocational expert with a complete hypothetical, (*id.* at 18). The Court addresses each argument in turn.

### A.     Evaluation of Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence when determining whether Plaintiff's severe impairments met or equaled a listed impairment.  (*Id.* at 10-11).  Specifically, Plaintiff contends that the ALJ: (1) erred in concluding that Plaintiff only had moderate limitations with regard to her mental impairments; (2) failed to consider Plaintiff's fibromyalgia under Social Security Ruling ("SSR") 12-2p; and (3) improperly found Plaintiff not credible.  (*Id.* at 10-17).

With respect to her mental impairments, the ALJ concluded that the severity of Plaintiff's affective disorder did not meet or medically equal the criteria for listing 12.04.  (Tr. at 17).  In order to satisfy the criteria for listing 12.04, the alleged mental impairment must result in at least two of the following: (1) "marked restriction of activities of daily living;" (2) "marked difficulties in maintaining social functioning;" (3) "marked difficulties in maintaining concentration, persistence, or pace;" or (4) "repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B.  "Marked" means "more than moderate but less than extreme."  *Id.*

6

With respect to activities of daily living, the ALJ found that Plaintiff had moderate restrictions because "sometimes she cannot move her 'whole body,' . . . does not cook, . . . [but] can shop for food and clothes, . . . [and] assists with getting her granddaughter ready for school." (Tr. at 18).  As to social functioning, the ALJ determined that Plaintiff had moderate difficulties because she "does spend time with others . . . [and] travels alone."  (*Id.*).  With regard to concentration, persistence, or pace, the ALJ again concluded that Plaintiff had moderate difficulties given that she can "pay attention for about 1 hour[,] . . . follow instructions very well[,] . . . gets along with authority figures[,] . . . [but] does not handle stress well."  (*Id.*).  The ALJ also concluded that the claimant did not experience episodes of decompensation that have been extended in duration.  (*Id.*).

The Court concludes that the ALJ's determination was supported by substantial evidence.  Indeed, Plaintiff cites to medical consultant Dr. Ira Gash's opinion that she is markedly limited in her ability to travel to unfamiliar places or use public transportation.  (*Id.* at 461).  Although this may be true, Plaintiff is still able to travel alone, and does perform many other daily living activities—such as shopping and assisting with childcare.  (*Id.* at 303).  Moreover, Dr. Gash ultimately opined that Plaintiff suffered from moderate restrictions and difficulties with respect to her daily living activities, social functioning, and concentration, persistence, or pace.  (*Id.* at 456).

Plaintiff also argues that she has experienced repeated episodes of decompensation that have lasted for many years.  (Pl. Mov. Br. at 11).  However, Plaintiff fails to meet her burden at step two by providing medical evidence in support of her position that she has experienced episodes of decompensation.

Next, Plaintiff contends that the ALJ failed to evaluate fibromyalgia under SSR 12-2p.  (Pl. Mov. Br. at 11).  But, SSR 12-2p has no bearing on the ALJ's decision in the instant case. The

purpose of SSR 12-2p is to "provide[] guidance on how . . . [to] develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how . . . [to] evaluate fibromyalgia in disability claims and continuing disability reviews." *Evaluation of Fibromyalgia*, SSR 12-2p 2012 WL 3104869 (S.S.A. July 25, 2012).   Here, the ALJ concluded that Plaintiff's fibromyalgia was a severe impairment—a decision in Plaintiff's favor.   (Tr. at 16).   Simply put, there was no need for "guidance on how . . . [to] develop evidence to establish that a person has a medically determinable impairment of fibromyalgia" because the ALJ did in fact conclude that Plaintiff's fibromyalgia was a severe impairment.   *See Accomando v. Comm'r of Soc. Sec.*, No. 13-1391, 2014 WL 6389060, at *7 (D.N.J. Nov. 14, 2014) ("The new Social Security Ruling, SSR 12–2P does not affect ALJ Krappa's ruling because ALJ Krappa found Plaintiff's Fibromyalgia to be a severe impairment.").   Any error in failing to reference SSR 12-2p is harmless because the ALJ would have reached the same conclusion regarding the severity of Plaintiff's fibromyalgia.

Moreover, to the extent that Plaintiff argues that the ALJ's failure to consider SSR 12-2p affected the remainder of his analysis, the Court concludes that this argument is without merit. Indeed, the ALJ considered Plaintiff's impairments and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 19).   Nevertheless, based on a review of the medical evidence in the record, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting of effects of the alleged symptoms not to be credible.   (*Id.*).   As a result, the ALJ concluded that Plaintiff had the RFC to perform light work given the medical evidence in the record.   (Tr. at 18-19).   Accordingly, the ALJ's failure to reference SSR 12-2p does not create a basis to remand because the RFC determination was based on a fulsome review of the medical evidence in the record.   *See Accomando*, 2014 WL 6389060, at *7 ("Thus, [SSR 12-2p] is irrelevant because the severity of

Plaintiff's Fibromyalgia was not discounted in ALJ Krappa's ruling.  Instead, ALJ Krappa relied on Dr. Fechner's testimony that Plaintiff, despite her Fibromyalgia and other impairments, could perform certain sedentary work.").

Next, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility concerning pain.  Specifically, Plaintiff contends that the ALJ applied the wrong legal standard regarding pain, and that the ALJ's finding must be based on something more than mere speculation.  (Pl. Mov. Br. at 13).

Assessing a claimant's symptoms involves a two-step process. First, the ALJ must determine whether there is a "medically determinable impairment that could reasonably be expected to produce [a claimant's] symptoms."  20 C.F.R. § 404.1529(b).  Second, the ALJ must evaluate the "the intensity and persistence of [] symptoms, such as pain, and determin[e] the extent to which [a claimant's] symptoms limit [her] capacity for work."  20 C.F.R. § 404.1529(c).  When subjective complaints are unsupported by objective medical evidence, the ALJ must make a credibility determination based upon the entire record.  *Conn v. Astrue*, 852 F. Supp. 2d 517, 527 (D. Del. 2012).  An ALJ's credibility determination is afforded deference.  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses . . . .").

Under this deferential standard, the Court concludes that substantial evidence supports the ALJ's determination.  The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Tr. at 19).  But, the ALJ went on to state that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ."  (*Id.*).  Specifically, the ALJ concluded that

Plaintiff's "allegations are not supported by substantial disabling objective findings in the medical evidence of the record." (*Id.*).  According to the ALJ, Plaintiff's Function Report was inconsistent with her testimony.  (*Id.*).  Plaintiff testified that she had a lot of pain and "would not be able to do her past relevant work or any work because she would be absent at least two days per week." (*Id.*).  However, the ALJ noted that Plaintiff is able to take care of her granddaughter and pets, travels alone, and does not take strong narcotics for pain.  (*Id.*).  Indeed, Dr. Gash indicated that Plaintiff was marked in her ability to travel to new places.  (*Id.* at 461)  But again, this is inconsistent with Plaintiff's own testimony that she travels alone.  (*Id.* at 302-303).

Moreover, to make this credibility determination, the ALJ relied on the testimony of medical expert Dr. Galst, who opined that "there was insufficient data as to claimant's physical state . . . except for claimant's complaints." (*Id.* at 19).  Indeed, the ALJ pointed to reports—which Dr. Galst reviewed—indicating that Plaintiff's thyroid function was normal with medication, that her asthma was mild, and that she could walk up to half a mile.  (*Id.*).  Accordingly, the Court concludes that substantial evidence supports the ALJ's credibility determination.

### B.     Residual Functional Capacity Determination

Next, Plaintiff argues that the ALJ erred in his RFC determination.  In particular, Plaintiff contends that the ALJ failed to consider all of the medical evidence in the record and justify his findings that Plaintiff could perform light work.  (Pl. Mov. Br. at 17).  According to Plaintiff, her treating physician limited her to lifting five pounds but not more than ten pounds, standing or walking for less than two hours per day, sitting for one half-hour a day due to pain, and pushing and pulling at a limited capacity.  (*Id.* at 18).

An RFC analysis "must first identify the individual's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis." *Santiago v. Barnhart,*

367 F. Supp. 2d 728, 733 (E.D. Pa. 2005). "In making a residual functional capacity determination, the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.*

Here, the ALJ determined that Plaintiff has the RFC to perform light work. (Tr. at 18). In particular, the ALJ concluded that Plaintiff could

> occasionally lift and/or carry 20 pounds; 10 pounds frequently, stand and/or walk about 6 hours in an 8 hour work-day; sit about 6 hours in an 8 hour work-day. . . . [P]erform frequent postural maneuvers; must avoid concentrated exposure to fumes, odors, dusts, and gases; limited to simple routine, repetitive unskilled tasks.

(*Id.*).

The Court concludes that this RFC determination is supported by substantial evidence. Medical expert Dr. Galst reviewed Exhibits 1F through 17F on two occasions and concluded that, "based on the . . . lack of objective data, . . . there is no evidence that she was . . . not capable of doing light work." (*Id.* at 40). Furthermore, Dr. Galst opined that the only evidence prohibiting Plaintiff from performing medium work was her own subjective complaints. (*Id.* at 41).

In particular, Dr. Galst addressed Dr. Frank Barbera's reports—Plaintiff's treating physician—and noted that Dr. Barbera concludes, without sufficient foundation, that Plaintiff is less than sedentary. (*Id.* at 38-39). Notably, Dr. Barbera did not find that Plaintiff was completely disabled. Rather, Dr. Barbera opined that Plaintiff was limited to lifting five pounds, but not more than ten, limited to standing or walking for less than two hours per day, and limited to sitting for not more than thirty minutes a day. (*Id.* at 471-473). However, Dr. Galst highlighted that Plaintiff's earliest visits to Dr. Barbera only date back to 2007, which is after the alleged onset

date of December 31, 2005. (*Id.* at 38). Moreover, Dr. Galst indicated that there is no objective information as to how Dr. Barbera diagnosed Plaintiff with fibromyalgia. (*Id.*).

Additionally, the ALJ afforded great weight to state agency consultant Dr. A. Cirillo, who opined that Plaintiff could perform light work. (*See id.* at 20, 408-415). In support of this conclusion, Dr. Cirillo stated that "[t]here were no . . . findings noted . . . in the spine nor extremities[;] [t]here were no motor nor sensory deficits noted." (*Id.* at 409).

Moreover, the ALJ concluded that Plaintiff's allegations were unsupported by the medical evidence in the record. As stated earlier, Plaintiff's Function Report contradicted her testimony at the hearing. Plaintiff indicated she was in a lot of pain and would be absent from work at least two days a week. (*Id.* at 19). However, her Function Report indicated that she helps care for her granddaughter and pets, travels alone, shops for clothes and food, and does not take strong narcotics for her pain. (*Id.* at 19, 303-305). Plaintiff also indicated that she could lift up to thirty pounds and walk about three blocks, (*id.* at 305), which supports the ALJ's light work RFC assessment.

Accordingly, the Court concludes that the ALJ's RFC determination was supported by substantial evidence.

### C.     Hypothetical Posed to Vocational Expert

Last, Plaintiff argues that the ALJ erred as a matter of law by failing to provide the vocational expert ("VE") with a complete hypothetical. (Pl. Mov. Br. at 18). In particular, Plaintiff claims that the ALJ "failed to include all of plaintiff's mental impairments but only limited the hypothetical individual to simple, routine, repetitive work." (*Id.* at 19 (internal quotation marks omitted)).

At step five, the ALJ must determine if the claimant can perform any other work that exists in significant numbers in the nation's economy.  *Johnson v. Astrue*, No. 09-1073, 2010 WL 2891496, at *11 (W.D. Pa. July 21, 2010).  In making this determination, the ALJ may rely on the expert testimony of a VE.  *Id.*  "A vocational expert or specialist may offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work."  20 C.F.R. § 404.1560(b)(2).  A "hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).  Nevertheless, the ALJ need not include every *alleged* impairment. *Id.* at 554.  Rather, the ALJ need only include those impairments that have been determined to affect Plaintiff's ability to work.  *Covone v. Comm'r of Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005) (citing *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)) ("*Burns* requires that a hypothetical include all of the claimant's credibly established limitations, but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's RFC.").

Here, the Court concludes that the hypothetical posed to the VE adequately represented all of Plaintiff's impairments.  The ALJ concluded that Plaintiff had the RFC to perform light work, but must be limited to "simple routine, repetitive unskilled tasks."  (Tr. at 18).  In reaching this determination, the ALJ considered Plaintiff's impairments.  (*Id.*).  Indeed, the ALJ concluded that Plaintiff's affective disorder was severe, (*id.* at 16), but ultimately concluded that Plaintiff had only moderate restrictions in daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and that she did not experience episodes of

decompensation that have been extended in duration, (*id.* at 18).  The ALJ consulted vocational expert Rocco Meola and asked him to assume a hypothetical individual with Plaintiff's education, training, and work experience, that is "limited to the full range of light work, . . . [and] simple, routine, repetitive unskilled tasks," with "frequent postural maneuvers," who must avoid "concentrated exposure to fumes, odors, dust and gasses."  (*Id.* at 56-57).  Meola opined that this hypothetical person could not perform Plaintiff's past relevant work, (*id.* at 57), but that jobs existed in the national economy that this person could perform, (*id.*).

The ALJ's hypothetical accounted for Plaintiff's moderate restrictions and limitations by limiting the hypothetical individual to "simple, routine, repetitive unskilled tasks" and requiring that he or she to avoid "fumes, odors, dust and gasses."  (*Id.* at 56-57).  Although Plaintiff's impairments were severe, they had limited effect on her ability to work, as evidenced by the moderate restrictions and limitations.  Accordingly, the Court concludes that the ALJ's hypothetical was accurate.  *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) ("For example, in line with her finding that McDonald only had moderate limitations with his ability to maintain concentration, persistence and pace, the ALJ included in her hypothetical that the individual be limited to simple, routine tasks and that he avoid noise extremes and bright or sudden light changes." (internal quotation marks omitted)).

## V.    CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's opinion.  An appropriate Order accompanies this Opinion.


*s/Esther Salas*
**Esther Salas, U.S.D.J.**

14